**Mrs. Birdie CUMMINS, Claimant-Appellant,**

v.

**STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE, Defendant-Respondent.**

**No. 9087.**

Missouri Court of Appeals, Springfield District.

May 24, 1972.

Jerry D. Mee, Springfield, for claimant-appellant.

Elmore G. Crowe, Edward D. Summers, Jefferson City, for defendant-respondent.

STONE, Judge.

This is an appeal by Mrs. Birdie Cummins (hereinafter called claimant) from the judgment of the Circuit Court of Greene County affirming a decision and order of the Director of the State Department of Public Health and Welfare on January 28, 1970, denying her application for permanent and total disability aid under § 208.051.[1] After we declined to undertake appellate review of a collection of

1. All statutory references are to RSMo 1969, V.A.M.S. That portion of § 208.-051, here relevant, is as follows: "Aid to the permanently and totally disabled may be granted under this law to any person: . . . (4) Who is disabled by illness, injury, or other physical or mental impairment which is medically determinable and can be expected to be of long-continued and indefinite duration or to result in death. The determination of the disability must be certified by competent medical or other appropriate authority designated by the division of welfare, and such certificate is hereby declared to be competent evidence of any proceedings concerning the eligibility of such claimant to receive permanent and total disability benefits. Benefits may be granted or continued only while it is the judgment of the division of welfare that such physical or mental impairment is of a nature and degree of severity as to be total and permanent . . . ."

papers certified by the circuit clerk [Cummins v. Public Health and Welfare, Mo. App., 468 S.W.2d 663—see Stacy v. Department of Public Health and Welfare, Mo.App., 468 S.W.2d 651], a transcript on appeal conforming to the requirements of the applicable Supreme Court Rules of Civil Procedure was filed and the cause has been briefed, argued and submitted.

From the decision of the division of welfare on October 27, 1969, denying claimant's application on the stated ground that she was medically ineligible for permanent and total disability aid, she appealed to the Director of the State Department of Public Health and Welfare [§ 208.080, subsec. 1]; and on January 6, 1970, a hearing on that appeal was had before Referee C. J. Quimby, who stated at the outset that "I am a referee appointed by the Director with the duty to conduct a fair hearing so that all competent evidence on the subject of the disability of Birdie Cummins is received, recorded and delivered to the Director." § 208.080, subsec. 3.

Claimant's case was carefully developed at that hearing by the same attorney who appears on her behalf here. Claimant and her physician, Dr. Earl D. Russell, appeared in person and were interrogated in detail. Herschel Cummins, claimant's husband, made a fleeting appearance on the witness stand to verify the fact that he had been present while his wife deposed and to stamp her testimony as true in its entirety by an affirmative response to her counsel's interrogative invitation, "if you were testifying yourself, would your testimony be truthful and substantially the same thing as she has testified to?" The only witness appearing on behalf of the division of welfare was caseworker Velma Foster, whose brief examination related to the four offered exhibits.

At the time of hearing, Mrs. Cummins, then 39 years of age, resided with her husband and five of their six children ranging in age from a daughter 19 to a son 6 on a rural route about eight miles west of Springfield. The oldest daughter was married and resided in Springfield. Without objection or hindrance, claimant testified at length concerning her physical condition and medical history from her first year in school to the time of hearing. We eschew a tedious and needless review of her testimony and that of her attending physician, Dr. Russell, since her counsel advises us, in his statement of facts here, that "the main issue presented to the Director by the record . . . concerned evaluation of division [of welfare] Exhibit B," a signed medical report from Dr. Robert E. Stufflebam, to whom the division had referred claimant pursuant to statutory authority and requirement. § 208.075. However, we note in passing that for some two years prior to the hearing (that being the period during which Dr. Russell had attended her) claimant had been "on heart medication . . . both digitalis and quinidine on occasion," and that her counsel produced at the hearing "nine bottles of pills" obtained on prescriptions filled at "City Hospital" and then being taken by claimant for various stated purposes.

Exhibit B, Dr. Stufflebam's report, which was four typewritten pages in length with attached photostatic copy of an electrocardiogram, reflected a careful and comprehensive examination. It closed with the doctor's impression: "1. Psychophysiological reaction manifested by anxiety and depression. 2. No objective evidence of heart disease" and his comment: "It is noted that the patient does have an abnormal cardiogram but I feel that this is secondary to digitalis effect. The patient at this time has no objective evidence of heart disease such as cardiomegaly, heart murmurs, etc. *I believe that she could work if she were so motivated.*" (All emphasis herein is ours.) In important particulars, this report was contradictory of or inharmonious with the testimony of Dr. Russell.

Only two questions were, or properly could have been, presented to the

circuit court, i. e., whether a fair hearing was granted to claimant and whether the Director's decision was arbitrary and unreasonable. § 208.100(5); Garrard v. State Dept. of Public Health & Welfare, Mo.App., 375 S.W.2d 582, 585(1); Powers v. State Dept. of Public Health & Welfare, Mo.App., 359 S.W.2d 23, 25(1). In her first two points relied on, claimant here complains that she was not granted a fair hearing (a) because the referee examined caseworker Foster, "offered the exhibits into evidence, which he announced in advance that he was going to admit, cross-examined claimant . . ., and raised objections to evidence from Dr. Russell," and (b) because the Director's decision and order did not satisfy claimant's "review rights" under § 208.080, subsec. 3. As for *prong (a)* of this complaint, the transcript does not support the accusation that the referee "offered the exhibits into evidence, which he announced in advance that he was going to admit." On the contrary, when each of the division of welfare's four exhibits (Exhibits A to D, inclusive) was identified and offered, the referee stated the exhibit was "about to be admitted" and informed claimant's attorney that was the appropriate time for him to interpose objections, if any; and, as a result of objections thus lodged, Exhibits A and D were *not* received in evidence. With respect to the other segments of prong (a), the record discloses (1) that the brief examination of caseworker Foster related solely to identification of exhibits, (2) that claimant's *direct examination,* recorded on twenty-six pages of the transcript, was uninterrupted by a single objection, and her *cross-examination* by the referee, covering only two pages, pertained to no controverted matter and motivated no objection by claimant's counsel, and (3) that the only "objection" interposed by the referee during the sixteen-page direct examination of claimant's physician, Dr. Russell, was nothing more than a simple comment that a question as to why the witness would not recommend a certain test for claimant was "repetitious" (as indeed it was), which

comment nevertheless was followed without objection by the conclusionary statement of claimant's counsel concerning the same matter and Dr. Russell's elaborate confirmation thereof.

■ No error is assigned here as to any ruling by the referee; and our searching review of the transcript discloses no indication that claimant was in any respect limited or hindered in the presentation of evidence or that the referee in any wise intimidated, disparaged or discredited witnesses or manifested any hostility, animosity, bias or prejudice against claimant. Contrast Jones v. State Dept. of Public Health & Welfare, Mo.App., 354 S.W.2d 37. In these circumstances, the mere fact that the referee appointed by the Director to conduct the hearing also was charged with developing evidence and protecting the record on behalf of the division of welfare did not deprive claimant of a fair hearing. § 208.100(5); Wigand v. State Dept. of Public Health & Welfare, Mo. App., 454 S.W.2d 951, 957(12).

■ *Prong (b)* of claimant's complaint that she was not granted a fair hearing (i. e., that the Director's decision and order did not satisfy claimant's "review rights" under Section 208.080, subsec. 3), as elaborated in her second point relied on, charges that "the Director is to determine all questions presented by the appeal" and the evidence "raises questions that were not answered in [his] decision and order." However, since no authorities are cited under this point and there is no argument thereof [V.A.M.R. Rule 84.04(a), (d) and (e); formerly Rule 83.05], the "questions" to which counsel allude as unanswered are also to us undisclosed. Actually, the only question or issue before the division of welfare in the first instance and before the Director on appeal was whether or not claimant was permanently and totally disabled. If so disabled, she was medically eligible for permanent and total disability aid under § 208.051. If not so disabled, she was ineligible for such aid. Under the heading, "Findings of Fact," the Director

specifically found, inter alia, that "claimant's disorders and diseases are not of such a nature and degree of severity as to render her permanently and totally disabled." This was a finding of the *ultimate* fact upon which eligibility vel non depended, which fully supported the Director's "Decision" that "claimant . . . therefore is ineligible to receive benefits provided by Section 208.051 . . . ." By determining the question as to whether or not claimant was permanently and totally disabled, the Director fulfilled his duty to "determine all questions presented by the appeal" [§ 208.080, subsec. 3]; and, in the absence of any cited statutory or case law so requiring, we have neither license nor inclination to impose upon the Director by judicial fiat the onerous requirement that in proceedings of this nature he must make a comprehensive and complete *written* review of the *evidentiary* facts. The complaint that claimant was not granted a fair hearing is without substance or merit.

■ The third and fourth points relied on in claimant's brief are directed to alleged error on the part of the circuit court, rather than the Director. Point III is that "the court erred by unduly and without legal reason, limiting its own judicial review function and deprived claimant of the judicial protection of a citizen of this state to a fair review of an administrative decision which is provided claimant in Section 208.-100(5)." Counsel's argument under this point is that "the [circuit] court surrendered review powers to the Director by applying rules of review developed in decisions where the Director heard the witnesses and made the determination; however, the Referee heard the witnesses and therefore *judicial review rules on credibility of witnesses and weight of evidence* are inapplicable where the Director merely examined the same record that was before the court below and is before this court. This point was raised on motion for rehearing [in the circuit court] and suggestions citing authorities were submitted."

The "judicial review rules on credibility of witnesses and weight of evidence," in this category of cases applicable alike on judicial review by the circuit court and by an appellate court, are embodied in this simple and unambiguous language: "Questions concerning credibility of witnesses or the weight of the evidence are not before us upon this appeal." Collins v. Division of Welfare, 364 Mo. (banc) 1032, 1037, 270 S.W.2d 817, 820(5); Carlisle v. State Dept. of Public Health & Welfare, Mo. App., 341 S.W.2d 617, 624; Dysart v. State Dept. of Public Health & Welfare, Mo.App., 361 S.W.2d 347, 351. See Underwood v. State Dept. of Public Health & Welfare, Mo.App., 287 S.W.2d 109, 111(2). Claimant's counsel concedes in the "Conclusion" of his brief that: "No authorities are cited here as research was done for the suggestions offered the trial court and your writer was unable to secure cases in point and controlling of the fact situation before the circuit court. At this stage of the proceedings, your writer has been unable, due to time limitations, to produce cases in support of [claimant's] position . . . ."

Although claimant's counsel thus confesses his inability to cite authority in support of his contention, we have, ex gratia, reviewed his postjudgment "Suggestions" in the circuit court which particularly invited examination of five cases listed immediately following the statement "[s]ee for instance those cases where the hearing was had before the person or commission writing the opinion." Neither confronted with nor anticipating a contention such as that under consideration, the authors of reported opinions in cases of this character frequently have included no statement affirmatively denoting whether or not evidence had been taken before the Director personally or before a referee appointed by him for that purpose. There was no such affirmative statement in three of the five cases listed in claimant's "Suggestions." However, in one of those five cases, namely, Edwards v. State Social Security Com-

mission, Mo.App., 187 S.W.2d 354, 355, it was recorded that "[a] hearing . . . was duly held on the 3d day of December, 1943, *before a referee* . . . ." And the opinion in Wallin v. State Dept. of Public Health & Welfare, Mo. (banc), 422 S.W. 2d 345, the only one of those five cases involving a claim presented after the Department of Public Health and Welfare was created and established in 1945 [Laws of 1945, p. 945; see § 191.010], indicated by the recital "[a]ll evidence *heard and presented to* the Director was preserved . . . ." [422 S.W.2d at 346] that the "two hearings" in that case had been conducted by and before referees—a fact now confirmed by our personal examination of the transcript on appeal in *Wallin*, which also discloses that one of those hearings was before the same referee who held the hearing in the case at bar. Contrary to instant claimant's contention, the "judicial review rules on credibility of witnesses and weight of evidence" were applicable on her appeal to the circuit court, and that tribunal did not "unduly and without legal reason" limit its judicial review by so recognizing.

■ Claimant's fourth point is that "the [circuit] court erred by holding as a matter of law that the Director could properly disbelieve the [claimant] and her doctor and decide the claim solely upon the finding of lack of credibility of uncontradicted and unimpeached testimony in support of the claim as witness credibility is not in

the case and there was no contradiction of the testimony of claimant, her husband or of Dr. Russell." It is settled beyond room for doubt that the burden of proving his (or her) eligibility for public assistance in a proceeding of this character rests upon the claimant, and that the Director, as the fact-finding agency, passes on the credibility of witnesses and may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony in support of the claim. Wallin, supra, 422 S.W.2d at 347(3); Thornsberry v. State Dept. of Public Health & Welfare, 365 Mo. (banc) 1217, 1224, 295 S.W.2d 372, 376(5); Wigand, supra, 454 S.W.2d at 954(3, 4). In his findings of fact, the Director appropriately noted that claimant "has many complaints" before declaring that evaluation of the medical reports showed that "claimant's disorders and diseases are not of such a nature and degree of severity as to render her permanently and totally disabled." After a meticulous examination of the transcript and a careful study of the analytical seven-page memorandum opinion filed by the scholarly trial judge, we are impelled to the conclusion that claimant's fourth point is without merit.

The judgment of the circuit court affirming the decision of the Director is affirmed.

TITUS, C. J., and HOGAN, J., concur.