In the Matter of the ESTATE of Irene Savage VAN CLEAVE.

No. 61970.

Supreme Court of Missouri, En Banc.

Jan. 13, 1981.

Rehearing Denied Feb. 9, 1981.

Carroll J. Donohue, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

J. Wallace Van Cleave and Elizabeth V. Van Cleave appeal the denial of their petition for a decree that they had been equitably adopted by Irene Savage Van Cleave, deceased, and that as a result they were

entitled to be treated as "legally adopted" children of decedent for purposes of an inheritance tax determination under § 145.-060.1(1), RSMo 1978,[1] on property inherited from decedent. The trial court properly found that petitioners are not entitled to a decree of equitable adoption and therefore whether equitably adopted children are "legally adopted" as that term is used in § 145.060.1(1) need not be decided.[2] Affirmed.

This is the second appeal in this case. Originally the probate court denied the petition but did not decide whether petitioners had been equitably adopted because it concluded that petitioners would be taxed under § 145.060.1(5), rather than § 145.060.1(1) even if they had been equitably adopted. The circuit court affirmed the denial, and this Court reversed and remanded the judgment with directions that the probate court adjudicate whether petitioners are entitled to their requested decree of equitable adoption because "[o]nly if the court concluded that they were would it rule the second issue of whether as equitably adopted children the petitioners were entitled to have inheritance tax due from them determined under § 145.060.1(1)." *Matter of the Estate of Van Cleave*, 574 S.W.2d 375, 376 (Mo. banc 1978).

The executor of decedent's estate and petitioners entered into a stipulation of agreed facts that discloses the following:[3]

Petitioners were born the children of Brenton Van Cleave and Richard Maltbie Van Cleave. Their natural mother, Richard Maltbie, died August 1, 1923; Wallace was seven and Elizabeth was three. Their father married Irene Savage Van Cleave on January 17, 1925. No children were born of this marriage.

Brenton died January 25, 1972; Irene died October 17, 1972. At her death, decedent left all of her residuary estate to petitioners. In addition, the principal of an inter vivos trust established by decedent was distributed to petitioners.

After her marriage to Brenton Van Cleave, decedent assumed full responsibility for the care and upbringing of petitioners. Decedent always referred to petitioners as "her" children and regarded, treated and loved them as such. She cared for them when ill, counseled and advised them, provided moral and social guidance, and took an active role in directing their personal development. Decedent made all decisions concerning the upbringing and education of petitioners. Petitioners looked to her for maternal guidance and support, and treated and loved her as though she was their natural mother. Both as children and adults, petitioners always referred to decedent as their mother, and regarded her as such.

After petitioners left the St. Louis area to attend college, decedent remained in communication with them; she aided them with advice, gifts and other amenities. She helped initiate and promote the relationships which led to their respective marriages, and established a close and loving relationship with their spouses and families. Even though petitioners both settled outside of Missouri, they continued to maintain the same mutually close and affectionate relationships with decedent, who in turn acted as a grandmother, and later great-grandmother, to their own children and grandchildren.. Close friends who observed petitioners and the decedent concluded that the relationship in all respects was that of a devoted mother and devoted children, and did not realize that petitioners were not in fact decedent's natural children.

About 1961, both Brenton Van Cleave and decedent began to fail physically. Both underwent operations for cancer, and Brenton Van Cleave became almost totally deaf.

1. The rate of tax under § 145.060.1(1) is 1%. Under § 145.060.1(5), applicable to strangers in blood to the decedent, the rate is 5%.

2. This Court has jurisdiction because the appeal involved the construction of a revenue law of this state. Mo.Const. art. 5, § 3.

3. The Department of Revenue did not take part in the proceedings before the circuit court and does not dispute any of the facts stipulated. It entered the case solely for the purpose of litigating the legal effect of a decree of equitable adoption, the issue not reached in this case.

During her father's hospitalization, and on other occasions when he was incapacitated, Elizabeth traveled to St. Louis to care for decedent, leaving her own family to do so. Wallace was in St. Louis on business at monthly intervals, and always stayed with Brenton and decedent on these occasions. Following Brenton's death both petitioners traveled to St. Louis to care for decedent, and assist her with the affairs of the estate. Both petitioners were present in St. Louis at the time of decedent's death.

The trial court recognized the strong affinity between decedent and petitioners, and that she treated them as she would have treated them had they been adopted by her or had they been her natural children. It determined, however, that the relationship was consistent with that of a stepparent and stepchildren; that there was never any indication of an agreement or intention to adopt; and that this is not a case where "justice, equity and good conscience" require a decree of equitable adoption.

■ The court's order in denial of the decree of equitable adoption is to be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Equity may grant specific enforcement of a contract to adopt, or declare, in a proper case, that one is estopped to deny an adoption agreed to be made. *Rich v. Baer*, 361 Mo. 1048, 1056, 238 S.W.2d 408, 411 (1951). In order to obtain a decree of equitable adoption petitioners have the burden of producing evidence so clear, cogent and convincing as to leave no reasonable doubt in the chancellor's mind. *Hogane v. Ottersbach*, 269 S.W.2d 9, 11 (Mo.1954).

■ Petitioners concede that there is no contract or express agreement by decedent to adopt petitioners but contend that they and decedent "by their conduct during decedent's lifetime placed themselves in a position where it would be inequitable to permit the assertion that petitioners were not adopted." They rely on the often used statement that:

Where one takes a child into his home as his own, thereby voluntarily assuming the status of parent, and by reason thereof obtains from the child the love, affection, companionship and services which ordinarily accrue to a parent, he or those claiming through him will thereafter be estopped to assert that he did not adopt the child in the manner provided by law.

See *Drake v. Drake*, 328 Mo. 966, 973, 43 S.W.2d 556, 559 (banc 1931); *Taylor v. Coberly*, 327 Mo. 940, 956, 38 S.W.2d 1055, 1062 (1931); *Shelp v. Mercantile Trust Co.*, 322 Mo. 682, 694–95, 15 S.W.2d 818, 824 (1929); and *Holloway v. Jones*, 246 S.W. 587, 591 (Mo.1922). Petitioners do recognize, as did the trial court, that a decree of equitable adoption will be granted only where justice, equity and good faith require. *Rich v. Baer, supra.*

■ There is no evidence of conduct which in justice, equity and good faith should preclude the denial of petitioners' adoption. It is not questioned that decedent loved petitioners and treated them as her children, and that petitioners thought of decedent as their mother and returned her affection. It is true that she experienced the happiness of being a grandparent to petitioners' children, and that petitioners cared for her in her latter days. But the children also benefitted from having decedent as their stepmother. They were the recipients of her love, affection and guidance. They do not and need not seek an inheritance or property; decedent left petitioners all but a small portion of her estate. The relationship and conduct of decedent and petitioners was mutually beneficial; it was consistent with that of a stepmother and stepchildren. There is no evidence of an intent or attempt to adopt prior to decedent's death.

Petitioners cite and rely on *Drake v. Drake, supra; Taylor v. Coberly, supra; Holloway v. Jones, supra;* and *Mize v. Sims*, 516 S.W.2d 561 (Mo.App.1974). The facts in the present case distinguish it from

these cases because there is no evidence in this case of an agreement or intent to adopt, and this case does not present a situation where justice, equity and good faith compel a decree of equitable adoption. See *Hogane v. Ottersbach, supra; Capps v. Adamson,* 362 Mo. 539, 242 S.W.2d 556 (1951); *Rich v. Baer, supra.*

The denial of the decree of equitable adoption is affirmed.

All concur.